UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JACE W. ANDERSON,

       Petitioner,

v.                                     Case No.  8:09-cv-2083-T-17EAJ

SECRETARY, DEPARTMENT OF CORRECTIONS,

       Respondent.

_____

**O R D E R**

Jace Anderson timely petitions for the writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The petition challenges Anderson's trial-based convictions and sentences for lewd conduct and two counts of lewd or lascivious exhibition, which arise out of the Tenth Judicial Circuit, Polk County, Florida in case no. CF03-005859-XX.

A review of the record demonstrates that the petition must be **denied.**

Background

Jace Anderson was found guilty after a jury trial to lewd conduct and two counts of lewd or lascivious exhibition as charged in case no. CF03-005859-XX. Adjudicated guilty in accordance with the verdicts, Anderson was sentenced to fifteen years incarceration on each count. The sentences run concurrently.

On appeal from Anderson's trial-based judgment, his appellate counsel concluded in an *Anders* brief there was no meritorious basis for a claim of significant reversible error. Anderson did not avail himself of the opportunity to file an additional pro se brief. On August 17, 2007, the state district court entered its silent affirmance in case no. 2D06-466. *Anderson v. State*, 963 So.2d 234 (Fla. App. Dist. 2007)[table]. Anderson did not seek

rehearing; nor did he pursue certiorari review in the United States Supreme Court.

Anderson filed a pro se rule 3.850 motion for postconviction relief dated August 17, 2007. By order rendered October 25, 2007, the rule 3.850 motion was summarily denied; however, leave was granted for Anderson to amend ground one of his rule 3.850 motion. Anderson filed another pro se rule 3.850 motion dated November 19, 2007. After securing a response from the state, the postconviction court summarily denied the second rule 3.850 motion by order rendered March 14, 2008. Anderson appealed, and on April 8, 2009, the state district court per curiam affirmed without written decision in case no. 2D08-3201. *Anderson v. State*, 6 So.3d 612 (Fla. 2d DCA. 2009)[table]. The mandate issued May 5, 2009.   Anderson then filed the present petition, raising four grounds of ineffective assistance of counsel (with subclaims). (Doc. 1)

## STANDARDS OF REVIEW

### THE AEDPA STANDARD

Anderson's petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *Woodford v. Garceau*, 538 U.S. 202 (2003); *Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). AEDPA affects this Court's review of both factual findings and legal rulings entered by the state courts in the rejection of Anderson's federal claims.

Pursuant to 28 U.S.C. § 2254(e)(1), this Court's review of state court factual findings must be highly deferential; such findings are presumed correct, unless rebutted by a petitioner with clear and convincing evidence. *Crawford v. Head*, 311 F.3d 1288, 1295 (11th Cir. 2002); *Robinson v. Moore*, 300 F.3d 1320, 1342 (11th Cir. 2002). Similarly, the legal

rulings of claims adjudicated in state courts only provide a basis for federal relief where the state court adjudication was either "contrary to" clearly established federal law as determined by the United States Supreme Court, or involved an "unreasonable application" of such law. See 28 U.S.C. § 2254(d)(1); *Haliburton v. Secretary, Dept. of Corrections*, 342 F.3d 1233, 1238 (11th Cir. 2003).

In [*Terry*] *Williams v. Taylor*, 529 U.S. 362 (2000), the United States Supreme Court discussed these standards at length. The Court explained that a state court decision is "contrary to" clearly established federal law if either (1) the state court applied a rule that contradicts the governing law set forth by Supreme Court case law, or (2) when faced with materially indistinguishable facts, the state court arrived at a result different from that reached in a Supreme Court case. The question is whether the state court correctly identified the proper rule of law to be applied. *Robinson*, 300 F.3d at 1344-45; *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001). A state court decision is not "contrary to" established federal law even if a federal court might have reached a different result relying on the same law. *Williams*, 529 U.S. at 405-06; *Robinson*, 300 F.3d at 1344-45.

A state court ruling is an "unreasonable application" of clearly established federal law if it identifies the correct legal rule from Supreme Court case law, but unreasonably applies that rule to the facts of the petitioner's case. An unreasonable application may also occur if a state court unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context. A federal court does not independently review the correctness of the state court adjudication; the "unreasonable application" analysis requires a showing that the state court ruling is not simply incorrect or erroneous, but objectively unreasonable. *Williams*, 529 U.S. at 409-410; *Robinson*, 300

3

F.3d at 1345; *Putman*, 268 F.3d at 1241. The measuring stick for both the "contrary to" and "unreasonable application" assessments of the state court merits adjudication is "clearly established federal law," which refers only to the holdings, and not dicta, of the United States Supreme Court at the time of the relevant state law decisions. *Williams*, 529 U.S. at 412; *Putman,* 268 F.3d at 1241.

In *Brecht v. Abrahamson*, 507 U.S. 619 (1993), the Supreme Court set forth the standard for relief where error is determined, on habeas review, to exist. This test is "less onerous" than the harmless error standard enunciated in *Chapman v. California*, 386 U.S. 18 (1967). "The test is whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.' Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.' " *Brecht*, 507 U.S. at 637. Although no constitutional error has occurred in this case, any possible error would clearly be harmless beyond any reasonable doubt based on the facts and the record herein.

AEDPA requires greater deference to state court decisions than the traditional de novo standard of review; Anderson has the burden to overcome the presumption of correctness attached to state court factual findings or to establish that the state court legal rulings were contrary to, or unreasonable applications of, established federal law. *Crawford,* 311 F.3d at 1295.

## STANDARD FOR PROCEDURAL DEFAULT/PROCEDURAL BAR

A § 2254 application cannot be granted unless a petitioner "has exhausted the

remedies available in the courts of the State; . . ."  28 U.S.C. 2254(b)(1)(A); *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998).  "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  *See also, Henderson v. Campbell,* 353 F.3d at 891 ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.")(quoting *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001)); *Snowden v. Singletary*, 135 F.3d at 735 ("Exhaustion of state remedies requires that the state prisoner fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights") (quoting *Duncan v. Henry*,  513 U.S. 364, 365 (1995)).

Exhaustion of state court remedies generally requires a petitioner to pursue discretionary appellate review.  "'[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process, including review by the state's court of last resort, even if review in that court is discretionary."  *Pruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003)(citing *O'Sullivan*, 526 U.S. at 845).  This is required even if the state Supreme Court rarely grants such petitions and usually answers only questions of broad significance.  *O'Sullivan*, 526 U.S. at 845-46.

"The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine."  *Smith v. Jones,* 256 F.3d 1135, 1138 (11th Cir. 2001).  Under the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas

5

relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." *Smith v. Jones*, 256 F.3d at 1138.  "The doctrine of procedural default was developed as a means of ensuring that federal habeas petitioners first seek relief in accordance with established state procedures." *Henderson v. Campbell*, 353 F.3d at 891(quoting *Judd v. Haley*, 250 F.3d at 1313).

As stated above, a procedural default will only be excused in two narrow circumstances.  First, petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the default. "Cause" ordinarily requires petitioner to demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court. *Henderson v. Campbell*, 353 F.3d at 892; *Marek v. Singletary*, 62 F.3d 1295, 1302 (11th Cir. 1995).  To show "'prejudice,"  Anderson must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his factual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Hollis v. Davis,* 941 F.2d 1471, 1480 (11th Cir. 1991) (quoting *United States v. Frady,* 456 U.S. 152, 170 (1982). Anderson must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson v. Campbell,* 353 F.3d at 892.

Second, a petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause or prejudice, if such review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); , 353 F.3d at 892.  This exception is only available "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent."

*Henderson v. Campbell*, 353 F.3d at 892. The fundamental miscarriage of justice exception concerns a petitioner's "actual" innocence rather than his "legal" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (2001) (citing *Calderon v. Thompson,* 523 U.S. 538, 559 (1998)); *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986) (explaining that a "fundamental miscarriage of justice" occurs "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent"). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In addition, " '[t]o be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon*, 523 U.S. at 559 (quoting *Schlup*, 513 U.S. at 324) (explaining that "[g]iven the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected") (internal quotation marks omitted).

The *Schlup* Court stated that the petitioner must show constitutional error coupled with "new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial. *Schlup* 513 U.S. at 324. This fundamental miscarriage of justice exception is not available unless "the petitioner shows, as a factual matter, that he did not commit the crime of conviction." *Ward v. Cain*, 53 F. 3d 106, 108 (5th Cir. 1995) (denying certificate of probable cause)(footnote omitted).

"The Supreme Court fairly recently made clear that an ineffective assistance of counsel claim being used for cause to excuse a procedural default of another claim is not itself excepted from the doctrine of procedural default." *Henderson v. Campbell*, 353 F.3d

at 896.  In *Edwards v. Carpenter*, 529 U.S. 446, 451- 52 (2000), a habeas petitioner argued ineffective assistance of counsel as cause for his procedural default of other constitutional claims in his § 2254 petition. But, he had never raised this ineffective assistance claim in state court, and he was now procedurally barred from raising the claim. The Supreme Court held that unless the petitioner could establish cause and prejudice to excuse his procedural default of his ineffective assistance claim, he was barred from using it as a basis for cause to excuse his procedural default of the underlying claim. *Id.* at 451-53.

## STANDARD FOR EFFECTIVE ASSISTANCE OF COUNSEL

To prevail on a claim of ineffective assistance of trial or appellate counsel, a Petitioner must meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  *Strickland*'s two-part test requires a Petitioner to demonstrate that counsel's performance was deficient and "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* However, if a claim fails to satisfy the prejudice component, the court need not make a ruling on the performance component.

## DISCUSSION

### GROUND ONE

Anderson claims his counsel rendered ineffective assistance by not conducting a proper investigation regarding the allegations of the child victim. In his supporting facts, Anderson alleges the child victim stated Anderson masturbated to the point of ejaculation in her presence while outside on a patio of her parent's residence. According to Anderson,

he told his counsel this action did not occur. Anderson then faults his counsel for not gathering DNA evidence from the crime scene and having it tested.

Anderson claims that before trial, he asked his counsel about the results of an investigation, and his counsel told him no crime scene investigation was undertaken based on counsel's assessment that "no good would come of it."  Anderson asserts he gave his attorney explicit instructions to seek a continuance and investigate the crime scene to gather any DNA evidence, and that his demand was ignored.

After securing a response to Anderson's ground 1(a) of his second rule 3.850 motion, the state court summarily denied his claim.  In so doing, the postconviction court adopted the reasoning of the state in its response, which provides, in relevant part:

> DNA is used to prove identity, which was not at issue here. The Defendant was the uncle of victim C.A., who testified her uncle Jace Anderson committed acts of exposure of his genitals, masturbation, and ejaculation in her dad's apartment in her presence. See Transcript of Record on Appeal, Addendum, Vol I. thru II, Pgs 157- 163, 173, and 187-188.

> There was no carpet retrieved by law enforcement nor was there any carpet in evidence with which to perform DNA testing. Officer Tiffany Holden, Lake Wales Police Department, in direct examination, testified that law enforcement did not go to the victim's house where the molestation occurred and take fingerprints "or anything like that". She explained forensic evidence was not obtained because they knew the suspect. See Transcript of Record on Appeal, Addendum, Vol. II, Pg 263. On cross examination, defense counsel asked if the Lake Wales Police Department had materials that would allow them to do carpet fiber samples or for sperm collection, and Officer Holden indicated in the affirmative, but "that was not investigated". Id., Pgs. 264 and 265. Again, on redirect examination, she testified she didn't feel it was necessary to cut up the carpet and take samples. Id., Pg 266.

> The Defendant claims he asked trial counsel to have an examination of the carpet and to conduct a DNA test on the carpet so that the defense could "present unrefutable proof that no such incident (ejaculation by the Defendant in front of C.A.) occurred leading to no less than a not guilty verdict." Defendant's Motion, Pg. 2. The Defendant only makes conclusory statements, with no accompanying facts to prove the statements, rendering

his claim facially insufficient. *See Lecroy, supra*. From the record, defense counsel would not know exactly where to examine the carpet or even if the ejaculated sperm was on the carpet. The only testimony on this issue was given by Theo Lomax, case coordinator, Children's Home Society and Child Advocacy Center, who testified the victim, C.A., told her Jace had tried to touch her breasts and vagina and had ejaculated. This occurred one time when C.A. was in the living room on the couch. Transcript of Record on Appeal, Addendum Vol. II, Pg 234. That statement was available to the defense counsel before trial, but that statement certainly doesn't indicate the location of the Defendant or the ejaculated sperm. It is sheer speculation to assume that the ejaculated sperm landed on the carpet, for it could have landed on the couch or some other object, depending on the location of the Defendant. Any examination or DNA test of the carpet several months after the ejaculation, if negative for sperm or DNA identifying the Defendant, would not have been reliable nor would such results be probative. Even if the ejaculated sperm did land on the carpet and even if the exact location was known, the carpet might have been cleaned. Normal wear and tear from standing or walking on the carpet could compromise the results. The Defendant fails to meet his burden of proof of ineffective assistance of counsel. The Defendant also fails to meet his burden of proof of prejudice. His claim is facially insufficient and should be denied.

(Resp. Ex. 12 at 4-6)

Anderson does not overcome the presumption of correctness of the state court's findings in adopting the state response by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Nor does he overcome the strong presumption counsel's decisions regarding the state's evidence, as well as the crime scene, were made in the exercise of professional judgment. *Strickland*, 466 U.S. at 690.

To the extent Anderson suggests his counsel was constitutionally required to have the crime scene scoured for potential DNA evidence, he is mistaken. Counsel need not always investigate before pursuing or not pursuing a line of defense. *Chandler v. United States*, 218 F.3d 1305, 1318 (11th Cir. 2000) (en banc). "By its nature, 'strategy' can include a decision not to investigate ... [and] a lawyer can make a reasonable decision that no matter what an investigation might produce, he wants to steer clear of a certain course."

*Rogers v. Zant*, 13 F.3d 384, 387 (11th Cir. 1994). In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland,* 466 U.S. at 691.   In other words, the duty to investigate "does not ... compel defense counsel to investigate comprehensively every lead or possible defense ... or to scour the globe on the off-chance something will turn up." *Rompilla v. Beard*, 545 U.S. 374, 383 (2005).

It is objectively reasonable to conclude Anderson's allegations do not satisfy *Strickland*'s deficiency prong. In his rule 3.850 motion, Anderson did not suggest his trial counsel misled him about the perimeters of counsel's investigation. Instead, he faulted counsel for not complying with his supposed demand to pursue testing notwithstanding counsel's concerns. Counsel's decision not to search for potential evidence and secure DNA testing of the potential evidence, despite Anderson's insistence to the contrary, was within trial counsel's authority and discretion. *Florida v. Nixon*, 543 U.S. 175, 187 (2004); *Taylor v. Illinois*, 484 U.S. 400, 417-18 (1988)).

As a general proposition, an attorney is duty bound to consult with his client regarding critical decisions, including questions of overarching defense strategy. See Strickland, 466 U.S. at 688. "That obligation, however, does not require counsel to obtain the defendant's consent to 'every tactical decision.' " *Florida v. Nixon*, 543 U.S. 175, 187, (2004)(citing *Taylor v. Illinois*, 484 U.S. 400, 417-18 (1988)). With the exception of those decisions of such moment that they cannot be made on a defendant's behalf, (i.e., whether to plead guilty, to waive a jury, to testify, or to take an appeal), an attorney has full authority to manage the conduct of trial without obtaining his client's approval. *Id.*

Anderson is not entitled to a probe into counsel's reasoning regarding the crime scene because Anderson's assertions, even if adduced, do not overcome the strong presumption his counsel's assessments were reasonable and professional decisions. *See Strickland*, 466 U.S. at 690; *see also Williams v. Head*, 185 F.3d 1223, 1228 (11th Cir. 1999)(an ambiguous or silent record is not sufficient to disprove the strong and continuing presumption of effective representation with regard to counsel's performance). Although Anderson contends his counsel should have examined the crime scene for DNA evidence, he did not claim in his rule 3.850 motion that such evidence was, in fact, located by law enforcement or, for that matter, by anyone prior to Anderson's jury trial. Nor did Anderson plead facts which, even if adduced, would show semen would have necessarily been detected on the carpet.

The likelihood of such discovery is relegated to conjecture on Anderson's part, with no accounting for such factors as the passage of time and weather conditions. The state prosecutor during closing arguments illuminated this point in querying what if it had rained daily for two months of that year and washed away biological evidence from the porch. (Resp. Ex. 1, Add 2 T 365) Additionally, as the postconviction court observed, normal wear and tear or potential cleaning of the carpet might diminish the potential for detection of biological evidence thereon.

Moreover, even assuming that biological evidence could have been recovered on the porch and subjected to DNA testing upon counsel's undertaking Anderson's representation, Anderson fails to account for the potential that such biological evidence could have proved damaging to the defense. Indeed, the fear of the unknown may, itself, be reasonable. *Chandler,* 218 F.3d at 1324. At least one reasonably competent attorney

under the circumstances could forego the proposed testing because such evidence might produce incriminating evidence against Anderson. *See e.g., Jones v. Galdis*, 2005 WL 1705470 (M.D. Fla. July 20, 2005) (unpublished) (reasonably competent attorney could forego request for experts on ballistics and gunshot residue to avoid risk analysis might serve to inculpate Jones, especially where eyewitness testimony pointed to him as trigger man.) It is therefore objectively reasonable to conclude Anderson fails to show any deficiency in counsel's foregoing pursuit of the proposed analysis.

This claim can be denied on *Strickland*'s prejudice prong without addressing the deficiency prong. In envisioning exonerating DNA test results, Anderson merely engages in speculation, which is insufficient to demonstrate actual prejudice. *See Aldrich v. Wainwright*, 777 F.2d 630, 637 (11th Cir. 1985) (speculation insufficient to carry burden of a habeas corpus petitioner as to what evidence could have been revealed by further investigation).

The central flaw in Anderson's claim is his self-serving assumption that biological evidence would have been later detected if he had committed the alleged offenses as the victim alleged. Even if his counsel had adduced evidence showing Anderson's DNA was not detected on the carpet, the state could simply attribute the absence of the DNA evidence to factors other than the victim's credibility. In short, any showing Anderson's DNA was not found on the carpet porch would not have materially undermined victim's C.A.'s observation of white stuff coming from Anderson on to the floor. (Resp. Ex. 1, Add 1, T 173). Anderson does not allege facts which, if adduced, would demonstrate otherwise.

At trial, Anderson's counsel capably capitalized on the absence of DNA testing to promote to Anderson's jury that a reasonable doubt existed in his case. (Resp. Ex. 1, Add

2 T 358) Had his counsel instead adduced testimony showing that no biological evidence was found on the carpet, that testimony would not establish that the offenses could not have occurred as the victim maintained. Accordingly, it is objectively reasonable to conclude Anderson fails to demonstrate there was any reasonable probability of a different outcome had his counsel pursued the matter of DNA testing as Anderson now proposes. The state court decision resulted in a reasonable application of *Strickland* under either prong and a reasonable determination of the facts in light of the evidence.

Ground one does not warrant habeas relief.

Ground Two

Anderson contends his trial counsel rendered ineffective assistance by not seeking a continuance when the state produced an out-of-state witness who he alleges was not available for deposition before trial. This aspect of ground two was not fairly presented to the state courts and is procedurally barred.

In ground 1(b) of his second rule 3.850 motion, Anderson claimed his counsel failed to investigate state witness T.D.'s testimony, who Anderson alleged was allowed to testify to events that occurred over a decade before his trial. Claiming T.D. arrived a day before she testified, Anderson faulted his counsel for not asking for a recess at trial to depose T.D. or, alternatively, for not previously moving the court to require the state to produce T.D. for deposition. Anderson did not, however, allege his counsel was ineffective for not requesting a continuance of his jury trial.

The state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Thus, to properly exhaust a claim, "state prisoners

-14-

must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." 526 U.S. at 845.

Anderson's allegation that his counsel was remiss for not seeking a continuance is now barred by the two-year limit of rule 3.850, *see Whiddon v. Dugger*, 894 F.2d 1266 (11th Cir.) (recognizing and applying two-year bar of Rule 3.850), *cert. denied*, 498 U.S. 834, (1990), and by the state's successive petition doctrine. *See e.g., Pope v. State*, 702 So. 2d 221, 223 (Fla. 1997)(successive postconviction relief motions filed after the expiration of the time limit must be based on newly discovered evidence). If a petitioner asserts new allegations of ineffective assistance of counsel that were not timely and properly raised in state court, they may not be considered by this Court. *See Footman v. Singletary*, 978 F.2d 1207, 1211 (11th Cir. 1992); *Jackson v. Herring*, 42 F.3d 1350, 1355 (11th Cir.), *reh'g. denied*, 51 F.3d 1052 (11th Cir. 1995)(petitioner's ineffective assistance claim was not raised in state court and was procedurally barred).

Any cause allegation is itself barred by the two-year time limit of rule 3.850 and the state's successive petition doctrine. Not showing cause, Anderson cannot avoid his default, as the cause and prejudice components are in the conjunctive and thus both must be established to escape the preclusive effect of his procedural default. *Engle v. Isaac*, 456 U.S. 107 (1982).

Even if he could show valid cause, Anderson is unable to meet the prejudice component of *Wainwright v Sykes*. He does not set out a sufficient basis to conclude the claimed error actually and substantially disadvantaged his defense so that he was denied fundamental fairness. *Baldwin v. Johnson*, 152 F.3d 1304, 1319 (11th Cir. 1998)(quoting

-15-

*McCoy v. Newsome*, 953 F.2d 1252, 1261 (11th Cir. 1992) (in turn citing *Murray v. Carrier*,

477 U.S. 478, 494, 106 S.Ct. 2639, 2648, 91 L.Ed.2d 397 (1986)).

This ground is exhausted only to the extent of his allegation in ground 1(b) of

Anderson's second rule 3.850 motion that his counsel was ineffective for not investigating

and deposing T.D., the summary denial of which Anderson appealed. Anderson had

alleged that had his counsel taken a recess or moved to produce the witness at an earlier

date for deposition, his counsel would have been aware of purported inconsistencies in her

statements and would have been prepared to present a proper defense or move to strike

the witness. In denying ground 1(b) of his second rule 3.850 motion summarily, the

postconviction court adopted the state's response, which provides, in relevant part:

> The Defendant claims his trial counsel was ineffective for failing to investigate or depose witness T.D., who testified to acts of previous child molestation perpetrated upon her by the Defendant in 1988. The Defendant's Motion claims that if his trial counsel had taken the deposition of T.D. he could have moved the Court to strike T.D. as a witness and kept her testimony from being heard by the jury because of "inconsistancy [sic] between original complaint against defendant and her present testimony." Defendant's Motion at pg.3. The record does show that the original information charging the Defendant in the 1988 case alleged penetration of the vagina of T.D., a child under twelve years of age. See Transcript of Record on Appeal, Supplement, at pg. 345. When T.D., now twenty six years old, testified in the instant case, she said the Defendant molested her between the second and third grade by having her touch his penis with her hands and with her mouth. See Transcript of Record on Appeal, Addendum, Volume II, pg. 287 and pg. 288. When asked by the prosecutor if there was any other physical contact she testified she couldn't remember because she had blocked it all away. Id., pg. 289. The Defendant makes a conclusory statement that the "inconsistency" would have rendered the testimony inadmissable. Under Section 90.404 (2)(b), Florida Statutes, the testimony as given by T.D. was admissable [sic] as evidence of other acts of child molestation. *See Mclean v State*, 934 So.2d 1248 (Fla. 2006). Assuming, arguendo, that the prior information charging penetration of the vagina by the finger of the Defendant, would be considered a prior inconsistent statement, this prior statement would not render the testimony of T.D. inadmissible but rather, under Sec. 90.608, Florida Statutes, could be used for impeachment

> purposes. The inconsistent statement would be relevant only to the credibility of the witness and to the weight to be given to the testimony. The Defendant has not met his burden of proof for ineffective assistance of counsel and his motion is facially insufficient.
>
> Even if it could be argued that the Defendant had met his burden of proving ineffective assistance of counsel, the Record shows that the Defendant's claim is facially insufficient for lack of a showing of prejudice and should be denied. *See Tyler v. State*, 793 So.2d 137 (Fla. 2d DCA 2001). The Defendant's Motion states that the Court "might have" struck witness T.D. from testifying (because of the inconsistency) "[buying the defendant a better chance at receiving a not guilty verdict." Defendant's Motion, pg. 3. Such speculative statements do not meet the burden of proving prejudice, that is, that without the error, a reasonable probability exists that the result would have been different. See Hodges v. State, 885 So.2d 338, (Fla. 2003). The speculative statements also ignore the remaining evidence against the Defendant, including, but not limited to:
>
> > 1. The Defendant's niece, C.A., a child under twelve years of age, testified to acts of exposure of his genitals, masturbation, and ejaculation. See Transcript of Record on Appeal, Addendum, Vol I and II, pgs. 159-163, 173, and l87-l88.;
> >
> > 2.C.A's friend B.P., a child under twelve years of age, testified to acts of soliciting a child to commit a 1ewd or lascivious act, to-wit: to expose her genitals in lewd or lascivious manner. See Transcript of Record on Appeal, Addendum, Vol II, pgs. 200, 201, and 204;
> >
> > 3. A.M., now twenty years of age, gave "Williams Rule"evidence that a person later identified as the Defendant exposed his penis to her when she was twelve years of age. See Transcript of Record on Appeal, Addendum, Vol II, pgs. 277, 280, 281, and 285. Even without the "Williams Rule" testimony of T.D., there was an abundance of uncontroverted evidence against the Defendant for the jury to use in reaching its verdict of guilty. The Defendant has failed to meet his burden of proof as to prejudice. . . . .

(Resp. Ex. 12 at 7-9)

In adopting the state's response, the postconviction court, and in turn the state appellate court by its affirmance, have already answered the question of what would have

happened had his counsel moved to strike the testimony of the witness under state law. Anderson cannot gain a federal review of such state law determination. *See e.g., Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005)(Alabama Court of Criminal Appeals had already answered the question of what would have happened had counsel objected to the introduction of petitioner's statements based on state decisions; the objection would have been overruled; therefore, counsel was not ineffective for failing to make that objection).

Although whether trial counsel was constitutionally ineffective is a question of federal law, when the answer to the question turns on whether counsel should have raised issues of state law, § 2254(d) requires the federal court defer to the state court's decision regarding its own laws. *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984) (superceded by statute on other grounds). Federal courts must abide by the state courts' rulings on matters of state law. *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) (citations and footnote omitted). It is a fundamental principle state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters. *See Herring v. Secretary, Dept. of Corrections*, 397 F.3d 1338, 1354-55 (11th Cir. 2005) (citing *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997)(internal citations omitted).

The Florida courts did not find that T.D.'s statements warranted striking the witness under state law. Accordingly, Anderson failed to show counsel rendered deficient performance in not urging otherwise. *See e.g., Magwood v. Culliver*, 555 F.3d 968, 978 (11th Cir. 2009)("We are not prepared to require counsel to raise an argument that has already been decided adversely to his client's position by a state's highest court in order to avoid being found ineffective.") Nor did Anderson in his rule 3.850 motion plead a basis upon which to conclude his counsel was constitutionally obliged to seek a recess at trial or,

-18-

prior to trial, move for the state to produce T.D. for deposition at an earlier date.

Prior to trial, a hearing was held October 13, 2004, on the state's notice of intent to rely on *Williams*[1] Rule evidence. At the hearing, the prosecutor pointed out police reports were no longer in existence with respect to a prior case in which T.D. was a victim. The state did, however, have the charging document which would be furnished the state court and counsel for Anderson. (Resp. Ex. 1, Add R 128) Anderson's counsel then expressed concern over proceeding with the trial after only a brief recess in which to speak with her. The parties and court then agreed upon the procedure of setting up a telephonic deposition of the witness, after which the court would conduct the hearing on the state's notice with regard to T.D. (Resp. Ex. 1, V 1 R 130) The court directed the clerk to make a copy of the charging document in the prior case. (Resp. Ex. 1, V 1 R 131).

Although Anderson suggests his counsel did not speak with T.D., merely because the record is silent on whether a telephonic deposition took place does not demonstrate that the deposition did not happen. The trial court on March 28, 2005, rendered an order on the state's *Williams* rule notice. The order reflects the information in the case involving T.D. constituted the sole documentary submission by the state regarding details of the 1988 offense. Further, although the 1988 information alleged three counts, the state's notice in Anderson's case referred to count one in the prior case, which alleged conduct proscribed by § 794.011, Florida Statutes. (Resp. Ex. 1, Add R 345-346). More particularly, the information alleged Anderson digitally penetrated T.D.'s vagina when T.D. was under the age of twelve. (Resp. Ex. 1, Add R 359) Among other things, the state court concluded

---

[1] *Williams v. State*, 110 So. 2d 654 (Fla.) *cert. denied*, 361 U.S. 847 (1959). The *Williams* rule is codified in section 90.404(2)(a), Florida Statutes.

the proposed evidence was admissible, subject to balancing of the probative nature thereof in relation to any claimed prejudicial impact under state law, as well as giving of a cautionary instruction. (Resp. Ex. 1, Add R 356)

Even if Anderson's counsel did not speak with T.D. telephonically or otherwise prior to trial, Anderson fails to show any deficiency in a decision to forego deposing T.D. His counsel undeniably had the charging document in the 1988 case in advance, and Anderson fails to show not one competent attorney such as his counsel could conclude that even if T.D. in deposition and/or trial said something different than alleged in the 1988 case, her statement would not render her testimony inadmissible under Florida law. Indeed, as indicated herein, the state, and in turn, the postconviction court, concluded that even assuming the allegation in the charging document constituted an inconsistent statement, such would not render T.D.'s testimony inadmissible. Rather, such statement was relevant to the credibility of the witness and weight of the testimony. Resp. Ex. 12 at 7).

Furthermore, Anderson merely second guesses his counsel's tactics of foregoing cross-examination on the prior allegations. Anderson fails to recognize that the proposed course of action could have exposed him to damaging evidence. T.D. testified to Anderson's sexual acts to the best of her recollection. (Resp. Ex. 1 Add 2 T 289) Although Anderson suggests his counsel should have confronted her about the specific nature of the original allegations, he fails to appreciate that doing so would reveal to his jury that closer in time to the alleged incident, Anderson had been specifically charged with committing digital penetration and any lack of recall of the act would not demonstrate that the alleged offense had not, in fact, occurred.

The *Strickland* deficiency prong need not be addressed because Anderson does not

-20-

show actual prejudice. Had his counsel confronted T.D. about the original complaint, the jury could simply conclude the passage of time had dimmed her recollection and there was no material inconsistency in her testimony and the prior allegations. At any rate, the state's case did not turn on T.D.'s testimony. Anderson was not on trial for any act regarding T.D. and the state court gave Anderson's jury the standard cautionary instruction with respect to the other act evidence, including the testimony of T.D. In view of the compelling testimony of the victims of the charged offenses, Anderson fails to demonstrate that had his counsel performed as proposed with regard to T.D., there was any reasonable probability of a different outcome. The state decision resulted in a reasonable application of *Strickland* under either prong and a reasonable determination of the facts in light of the evidence.

Ground one does not warrant relief.

<div align="center">Ground Two</div>

Anderson also faults his counsel for objecting to admission of collateral crime evidence on the ground that the collateral crime evidence became a feature of his trial. This aspect of ground two is unexhausted and procedurally barred. Anderson did not fairly present this allegation in either his first or second rule 3.850 motion and then appeal an adverse ruling thereon. Anderson's allegation that his counsel was remiss for not urging that the collateral act evidence became a trial feature is now barred by the two-year limit of rule 3.850 and the state's successive petition doctrine. Not timely presenting his claim of proposed omission to the state court, Anderson is foreclosed from raising his new allegation. *Footman, supra.*

Any cause allegation is itself barred by the two-year time limit of rule 3.850 and the

state's successive petition doctrine. Not showing cause, Anderson cannot avoid his default, as the cause and prejudice components are in the conjunctive and thus both must be established to escape the preclusive effect of his procedural default. *Engle, supra.* Even if Anderson could show valid cause, Anderson is unable to meet the prejudice component of *Wainwright v Sykes.* Nor does he meet the fundamental miscarriage of justice exception.

Alternatively, this aspect of ground two can be disposed of on either prong of *Strickland.* Anderson fails to show not one reasonably competent attorney could conclude the state court was within its discretion to admit the testimony to the extent allowed and the testimony did not become a feature of his trial.

Furthermore, given the properly-admitted testimony, it is objectively reasonable to conclude the collateral act evidence did not implicate the fundamental fairness of Anderson's trial. *See generally, Dowling v. United States*, 493 U.S. 342, 352-53 (1990). At no point during summation did the prosecutor suggest that even if the evidence did not show beyond a reasonable doubt that Anderson committed the charged offenses, the jury could nonetheless find Anderson guilty. Given the independent evidence of his guilt of the charged offenses, it is objectively reasonable to conclude the testimony had no substantial and injurious effect or influence in determining the jury's verdicts. It is thus objectively reasonable to conclude Anderson's factual allegations, even if adduced, do not show there was any reasonable probability of a different result had his counsel objected as proposed.

Ground two does not warrant relief.

Ground Three

Anderson faults his counsel for not ensuring his right to a speedy trial. In his supporting facts, Anderson claims that when he first met with his attorney, he was assured

counsel would be ready within speedy trial limits. Anderson asserts that when more than 180 days had elapsed, his counsel purportedly reassured him he would invoke his speedy trial right and move to dismiss the charging document based on the expiration of 180 days.

However, this is not the ineffectiveness of counsel issue Anderson raised in his rule 3.850 motion. The thrust of his rule 3.850 claim was that his attorney had not filed a demand for speedy trial under rule 3.191(b) of the Florida Rules of Criminal Procedure. The relevant portion of Rule 3.191 provides as follows:

> (b) Speedy Trial upon Demand. Except as otherwise provided by this rule, and subject to the limitations imposed under subdivisions (e) and (g), every person charged with a crime by indictment or information shall have the right to demand a trial within 60 days, by filing with the court a separate pleading entitled "Demand for Speedy Trial," and serving a copy on the prosecuting authority.
>
> (1) No later than 5 days from the filing of a demand for speedy trial, the court shall hold a calendar call, with notice to all parties, for the express purposes of announcing in open court receipt of the demand and of setting the case for trial.
>
> (2) At the calendar call the court shall set the case for trial to commence at a date no less than 5 days nor more than 45 days from the date of the calendar call.
>
> (3) The failure of the court to hold a calendar call on a demand that has been properly filed and served shall not interrupt the running of any time periods under this subdivision.
>
> (4) If the defendant has not been brought to trial within 50 days of the filing of the demand, the defendant shall have the right to the appropriate remedy as set forth in subdivision (p).

Florida Rule of Criminal Procedure 3.191(a) further provides, in part:

> every person charged with a crime shall be brought to trial ... within 175 days of arrest if the crime charged is a felony. If trial is not commenced within these time periods, the defendant shall be entitled to the appropriate remedy as set forth in subdivision (p).

Pursuant to Fla.R.Crim.P. 3.191(p)(2), The remedy for the state's failure to bring a defendant to trial within the requisite time period is that the defendant may file a "Notice of Expiration of Speedy Trial Time, and within five days a hearing must be held. At the hearing, the trial court must determine whether one of the reasons for an extension of time exists, as enumerated in the rule. Fla.R.Crim.P. 3.191 (p)(1). Upon a finding that none of the reasons exist, the defendant must be brought to trial within ten days of the date of the trial court's order finding that a violation of the rule occurred and that no reason exists for an extension. Fla. R.Crim. P. 3.191(p)(3). This is known as the ten-day "recapture" period. If trial does not commence within the "recapture" period, the defendant may file a motion for discharge which, if granted, forever discharges the defendant from the crime. Fla. R.Crim. P. 3.191(p)(3).

In ground 1(c) of his (second) rule 3.850 motion, Anderson claimed his counsel was ineffective for "failing to file for a speedy trial upon defendant's request and counsel's consent." (Resp. Ex. 10 at 3) Claiming his attorney informed he would "file for a speedy trial," Anderson asserted that "on the day before the time would have expired for the state to take this case to trial or have this case dismissed by the court due to the sixty-day time limit, his counsel supposedly stated, " You might be a little upset with me because I forgot to file for a speedy trial." Id.

In short, Anderson's claim in state court was that his counsel was remiss for not filing a demand under Florida's speedy trial rule, thereby triggering a 60-day period in which to try him. Anderson did not claim his trial counsel stated he would file a notice of expiration of speedy trial under Rule 3.191(p). Nor did Anderson allege in his rule 3.850 motion that his attorney had allowed 180 days to elapse without filing such notice. All of his allegations

in such regard in ground three of the instant petition are unexhausted and now procedurally barred.

Habeas petitioners may not present particular factual instances of ineffective assistance of counsel in their federal petitions that were not first presented to the state courts. *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005) (holding that to satisfy the exhaustion requirement, a petitioner must have presented the instance of ineffective assistance that he asserts in his federal petition "such that a reasonable reader would understand [the] claim's particular legal basis and specific factual foundation") (internal quotation marks omitted); *Johnston v. Singletary*, 162 F.3d 630, 634-35 (11th Cir. 1998); *Footman v. Singletary*, 978 F.2d 1207 (11th Cir. 1992). Where a petitioner raises an ineffective assistance of counsel claim in the state court, but alleges different supporting facts than in his federal habeas proceeding, he will be deemed to have failed to fairly present the federal claim to the state court. *Feliciano v. McNeil*, 2009 WL 1971635 (N.D. Fla. July 6, 2009)(unpublished) (citing *Weeks v. Jones*, 26 F.3d 1030, 1044-46 (11th Cir. 1994) (rejecting petitioner's argument that "the general claim of ineffective assistance in state court preserves for federal review all alleged instances of ineffectiveness, regardless of whether evidence of a particular act was presented to the state court").

As a result of Anderson's failure to exhaust the allegations before this Court, Anderson has defaulted his claim.  His claim is barred by the two-year limit of rule 3.850 and the state's successive petition bar. Any cause allegation is itself also procedurally barred. Moreover, Anderson does not show prejudice or a fundamental miscarriage of justice to avoid his default.

Even construing his claim to raise only that alleged in his second rule 3.850 motion,

the posture of his claim does not improve. In summarily denying ground 1(c) of Anderson's

second rule 3.850 motion, the postconviction court held, in relevant part:

> As to claim 1(c), the Court find the Defendant again fails to set forth
> a facially sufficient claim for relief. Specifically, Defendant fails to advise
> when he requested that a Demand for Speedy trial be filed, and fails to set
> forth a facially sufficient basis of how he was prejudiced by such failure. *See*
> *Nelson v. State*, 875 So. 2d 579, 583 (Fla. 2004)("[A] defendant alleging an
> ineffective assistance of counsel claim must set out in his or her motion
> sufficient alleged facts which, if proven, would establish the two prongs
> necessary for relief based on ineffectiveness as outlined in *Strickland. See*
> *Freeman v. State,* 761 So. 2d 1055, 1061- 62 (Fla. 2000). In a rule 3.850
> motion, a defendant must therefore assert facts that support his or her claim
> that counsel's performance was deficient and that the defendant was
> prejudiced by counsel's deficient performance.") *See also Paredes v. State*,
> 921 so. 2d 32 (Fla. 3d DCA 2006), citing *Kennedy v. State*, 547 So. 2d 912
> (Fla. 1989)("The Defendant bears the burden of establishing a prima facie
> case based upon a legally valid claim; mere conclusory allegations are not
> sufficient to meet this burden.") Based on the foregoing, claim 1(c) is
> DENIED. . . . .

(Resp. Ex. 11)

Even if Anderson's counsel had indicated he would file a demand under the state's

speedy trial rule, nonetheless, Anderson did not allege a basis upon which to find counsel

was deficient for not doing so. He did not claim the state could not have tried him in

expedited fashion and failed to show not one reasonably competent attorney could have

so concluded.

Moreover, as shown, pursuant to the state's procedural rule, the remedy for a

speedy trial violation is not immediate discharge from the crime. At least one reasonably

competent attorney could take the view that even if a demand was filed, the speedy trial

time had expired, and a timely notice of expiration lodged, the state could still try Anderson

within the recapture window. Anderson does not claim the state prosecutor could not do

so. Accordingly, he is unable to show any deficiency in counsel's foregoing a bid for

discharge under Florida's speedy trial procedures.

The claim can be disposed of on *Strickland*'s prejudice prong without addressing the deficiency prong. Pursuant to the recapture feature of Florida's speedy trial rule, Anderson could have been tried within the window period under state law. He does not demonstrate otherwise. Accordingly, it is objectively reasonable to conclude there was no reasonable probability of Anderson's discharge under the state's speedy trial provisions had his counsel performed as now proposed. *See e.g., Davis v. McNeil*, 2009 WL 3756326 (N.D. Fla. Nov. 6, 2009)(unpublished) (Florida prisoner failed to demonstrate reasonable probability state court would have ordered his trial commence within ten days of a hearing held pursuant to Rule 3.191(p) and even if it did, that the state would fail to bring him to trial within the requisite ten-day "recapture" period). The state decision resulted in a reasonable application of Strickland under either prong and a reasonable determination of the facts in light of the evidence.

Ground three does not warrant relief.

### Ground Four

Anderson claims his counsel rendered ineffective assistance by not filing a motion for statement of particulars for the purpose of requiring the state to allege a more specific date with regard to the count alleging lewd and lascivious [conduct] in the presence of child victim C.A. The ground is exhausted only to the extent alleged as the claim of ineffectiveness raised in ground 1(d) of Anderson's second rule 3.850 motion. In summarily denying his claim, the state postconviction court held, in relevant part:

> In claim 1(d) Defendant asserts that his counsel was ineffective for failing to file a motion for statement of particulars, However, it is clear that Defendant has misinterpreted the purpose and effect of such a motion.

Defendant asserts that the State would have been unable to establish the exact dates of the offenses in this case and, therefore, files the charges alleging only a two month window period which, according to the Defendant, fails to meet a "prima facia [sic]" case. As such, counsel should have filed a Motion for Statement of Particulars and, because he did not, Defendant was denied a possible dismissal of all charged offenses." Motion at 4.

Defendant is mistaken. As provided in Rule 3.140(d)(3), Fla.R.Crim.P.:

Time and Place. – Each count of an indictment or information on which the defendant is to be tried shall contain allegations stating as definitely as possible the time and place of the commission of the offense charged in the act or transaction[.]

Defendant acknowledges in his Motion that the State could not prove "any exact dates for [the] charged offenses." Motion at 4. As such, a Motion for Statement of Particulars, filed pursuant to Rule 3.140(n) would have produced no more information or clarification of the dates of the offense then were first alleged in the Information. Accordingly, the failure to file a Motion for Statement of Particulars, under the circumstances, was not a "substantial and serious deficiency measurably below that of competent counsel." Nelson, supra, at 583. Based on the foregoing, claim 1(d) is DENIED.

(Resp. Ex. 11)

With respect to his underlying state law issue, the state was not obliged to narrow the period to a specific date where it was not known. *See Dell'Orfano v. State*, 616 So.2d 33, 35 (Fla. 1993)(noting that "[c]ommon sense dictates that admitted wrongdoing should not be shielded from prosecution merely because the State is unable to provide greater specificity in an information or indictment"; the court held a trial court, upon proper motion, was required to dismiss an information involving a lengthy period of time [30 months] if the state could not show clearly and convincingly that it had exhausted all reasonable means of narrowing the time frame further). In Anderson's case, the state court's affirmance of the rule 3.850 denial answers the underlying question of whether he was entitled to a statement of particulars under Florida law. Given that the state courts rejected his state law

arguments in denying his claim, Anderson cannot show any deficiency in counsel's foregoing a motion for statement of particulars under Florida law.

This claim can also be denied on *Strickland*'s prejudice prong without addressing the deficiency prong. Anderson, in his rule 3.850 motion, did not demonstrate the trial court would have been obliged to require the state to narrow the offense window under state law. It is thus objectively reasonable to conclude that even had his counsel filed the proposed motion, there was no reasonable probability of a different outcome. The state decision resulted in a reasonable application of *Strickland* under either prong and a reasonable determination of the facts in light of the evidence.

Finally, Anderson is barred by 28 U.S.C. § 2254(e)(2) from seeking an evidentiary hearing in this proceeding on any factual allegation not timely presented the Florida courts at trial and on direct appeal, or, as appropriate, in a timely rule 3.850 motion and then on collateral appeal from an adverse order thereon. Failure to develop any such factual assertion not alleged in state court in support of his grounds is solely attributable to his lack of diligence. Ground four does not warrant relief.

Accordingly, the Court orders:

That Anderson's petition is denied.  The Clerk is directed to enter judgment against Anderson and to close this case.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

The Court declines to issue a certificate of appealability pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts because Petitioner has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c)(2).  Because Petitioner is not entitled to a certificate of

appealability, Petitioner is not entitled to appeal in forma pauperis. Petitioner is assessed

the $455.00 appellate filing fee unless the Eleventh Circuit grants leave to proceed in forma

pauperis on appeal.

      ORDERED at Tampa, Florida, on October 25, 2010.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Counsel    of
Record
Jace Anderson